IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| IN RE JEFFREY D. BROTHERS | : | CIVIL ACTION |
| --- | --- | --- |
| | : | |
| | : | No. 19-3310 |

**MEMORANDUM**

**Juan R. Sánchez, C.J.**                                                                                        **March 10, 2020**

      Appellee-Debtor Jeffrey D. Brothers filed for Chapter 13 bankruptcy on March 17, 2014. Around that time, pro se Appellant-Creditor James Madigan purchased property owned by Brothers at a tax sale for approximately $14,000. Brothers sought to redeem the property pursuant to a payment plan in the bankruptcy action. The Bankruptcy Court confirmed Brothers's plan and Brothers began making payments toward redeeming the property. Madigan, however, vigorously fought to prevent Brothers from redeeming the property. Madigan now appeals the Bankruptcy Court's July 17, 2019, order denying his most recent motion and directing him to pay $424.55 toward outstanding late fees for taxes and utilities on the property. Because the underlying bankruptcy action has been dismissed and there is no stay that can be lifted, the Court will dismiss Madigan's appeal as moot insofar as it seeks to lift the bankruptcy action's stay. The Court will, however, vacate the July 17, 2019, order insofar as it directs Madigan to pay $424.55 because the Bankruptcy Court incorrectly imposed these costs on Madigan.

**BACKGROUND**

      Brothers purchased property at 236 North Peach Street, Philadelphia, PA 19139 (the Property), from Alyisa Montanez in the early 1980s. Brothers never recorded the deed from the sale. The original deed was lost in a fire during the 1990s.

      On January 16, 2013, the City of Philadelphia brought an action against Montanez—as record owner of the property—for delinquent real estate taxes on the Property. Three months later,

the Philadelphia County Court of Common Pleas entered judgment in favor of the City for $22,519.79. After this judgment was entered, Alyisa Montanez deeded the Property to the "Brothers Family Trust" (the Trust) with Brothers as the trustee. The Property was then sold at a sheriff's sale. Madigan purchased the Property at the sale for approximately $14,000. A few weeks later, Brothers filed for Chapter 13 Bankruptcy, and filed a bankruptcy plan that sought to redeem the Property.[1] The Bankruptcy Court confirmed Brothers's plan on May 13, 2015.

Almost six months after the plan was confirmed, Madigan filed a motion seeking relief from the bankruptcy stay. According to Madigan, Brothers failed to pay taxes and utilities for the Property as well as related late fees. A hearing on Madigan's motion was held on November 25, 2015. At that hearing, the Bankruptcy Court ordered Madigan to pay the current late fees for the unpaid taxes and utilities. The Bankruptcy Court, however, stated that moving forward Brothers would be responsible for paying the taxes and utilities, as well as any accrued late fees. *See* Tr. 22, Nov. 25, 2015, ECF No. 98 ("It's common sense that it's [Brothers's] responsibility for the current taxes and current water . . . . [Brothers] know[s] that obligation is out there and you better go find out what it is and pay it . . . . [Brothers] know[s] the money is owed. Get it paid."). Despite these orders, Madigan's motion for relief from the stay was not resolved at the hearing.

On December 28, 2016, the motion for relief from the stay was disposed of by the parties' stipulation. Under this stipulation, Brothers agreed to become current on the taxes and utilities for the Property and Madigan agreed to pay the outstanding late fees. Consent Order 2, Dec. 28, 2016, ECF. No 120. After this stipulation was entered, the Bankruptcy Judge handling the case retired and a new Bankruptcy Judge was assigned to the case.

---

[1] Brothers filed numerous amended plans with the Bankruptcy Court. The differences between these plans, however, are immaterial for the purposes of this appeal and will therefore not be addressed.

On May 22, 2019, Madigan filed another motion for relief from the bankruptcy stay—the basis of this appeal. In this motion, Madigan argued the 2013 deed transfer from Montanez to the Trust was fraudulent due to various misspellings on the deed and Brothers having failed to produce evidence of the Trust's existence. On July 17, 2019, the new Bankruptcy Judge denied Madigan's motion and ordered Madigan to (1) sign over the deed to the Property as Brothers's had paid the full amount owed to Madigan through the plan; (2) pay $424.55 toward late fees owed on the taxes and utilities for the Property which had accrued after the parties December 2016 stipulation; and (3) transfer all bills for taxes and utilities to Brothers's name. This appeal followed. In this appeal, Madigan argues (A) the 2013 deed transfer to the Trust was fraudulent so the bankruptcy stay should be lifted and the underlying plan's confirmation should be revoked; and (B) the Bankruptcy Court wrongly required him to pay $424.55 in late fees.

While Madigan's appeal was pending, the trustee for the bankruptcy action moved to dismiss Brothers's bankruptcy action for bad faith. The motion alleged Brothers acted in bad faith when he informed a car dealership that the trustee had authorized him to obtain a car loan when the trustee had not. On November 20, 2019, the Bankruptcy Court granted the trustee's motion and Brothers's bankruptcy proceeding was dismissed.

**DISCUSSION**

Because the underlying bankruptcy action has been dismissed and there is no stay that can be lifted, the Court will dismiss Madigan's appeal as moot insofar as it seeks to lift the bankruptcy action's stay and revoke the underlying plan's confirmation. Even if this portion of Madigan's appeal was not moot, it would fail because it is untimely and meritless. The Court will, however, vacate the July 17, 2019, order insofar as it directs Madigan to pay $424.55 because the Bankruptcy Court improperly imposed these costs on Madigan.

At the outset, because Brothers's bankruptcy proceeding has been dismissed and there is no relief that can be awarded from the stay or a confirmed plan that can be revoked, Madigan's appeal is moot insofar as it seeks to lift the stay and revoke the previously confirmed bankruptcy plan. "[W]hen a notice of appeal has been filed in a bankruptcy case, the Bankruptcy Court retains jurisdiction to address elements of the bankruptcy proceeding that are not the subject of that appeal." *See In re Ponton*, 446 F. App'x 427, 429 (3d Cir. 2011) (quoting *In re Transtexas Gas Corp.*, 303 F.3d 571, 580 n.2 (5th Cir. 2002)). A bankruptcy appeal becomes moot if the appellate court becomes unable to grant effective relief because of events that occurred in the underlying bankruptcy during the appeal. *See United Artists Theatre Co. v. Walton*, 315 F.3d 217, 226 (3d Cir. 2003). Typically, where a party appeals the denial of his motion for relief from a stay, an appeal becomes moot if the bankruptcy proceeding below is dismissed. *See Montelione v. Fed. Nat'l Mortg. Ass'n*, 183 F. App'x 200, 201-02 (3d Cir. 2006) (collecting cases); *In re Ponton*, 446 F. App'x at 429 (collecting cases).

Here, the dismissal of Brothers's bankruptcy action moots Madigan's argument that the bankruptcy's stay should be lifted and the plan's confirmation should be revoked due to fraud. While briefing on Madigan's appeal was being completed, Brothers's bankruptcy action was dismissed for bad faith conduct. Because Brothers's bankruptcy action has been dismissed and there is no longer a bankruptcy stay in place or a confirmed payment plan, the Court cannot grant Madigan effective relief. Accordingly, Madigan's appeal is moot insofar as it seeks relief from the stay and to revoke the confirmed payment plan. *See id.* (finding dismissal of bankruptcy proceeding mooted appeal); *Montelione*, 183 F. App'x 201 (finding voluntary dismissal of bankruptcy proceeding mooted a pending appeal that sought relief from an order lifting the automatic stay).

Even assuming Madigan's arguments in support of lifting the stay were not moot, there is no merit to his claim as it is untimely and he has not shown clear and convincing evidence of fraud. Madigan does not assert a legal basis for his challenge to the bankruptcy stay other than asserting Brothers received the deed to the Property in 2013 by way of fraud. Because the only mechanism that allows a creditor to invalidate a confirmed plan and lift a bankruptcy stay through a showing of fraud is 11 U.S.C. § 1330(a), the Court will construe Madigan's argument as a seeking to revoke the plan's confirmation pursuant to § 1330(a).

Section 1330(a) states, "[o]n request of a party in interest at any time within 180 days after the date of the entry of an order of confirmation . . . , and after notice and a hearing, the court may revoke such order if such order was procured by fraud." To revoke a confirmation order under § 1330(a), the movant must prove common law fraud, which requires showing:

> (1) that the debtor made a materially false statement; (2) that the debtor knew that the statement was materially false or that he made the materially false statement in reckless disregard for its truth; (3) that the debtor intended the court to rely on the materially false statement; (4) that the court did rely on the materially false statement; and (5) that as a result of the court's reliance, the confirmation order was entered.

*Rafferty v. First Union Mortg. Corp.*, No. 97-6763, 1998 WL 13584, at *3 (E.D. Pa. Jan. 9, 1998) (citing *In re Siciliano*, 167 B.R. 999, 1014–15 (E.D. Pa.1994)). The movant must prove fraud by clear and convincing evidence. *Rafferty*, 1998 WL 13584, at *3.

Madigan's attempt to revoke the confirmation order under § 1330(a) is both untimely and meritless. The bankruptcy plan here was confirmed on May 13, 2015. Madigan filed his motion seeking to invalidate the confirmed plan on the basis of fraud on May 22, 2019—more than four years after the plan was confirmed. Madigan's attempt to invalidate the plan under § 1330(a) was well past the 180-day limit imposed by that statute and is untimely. Regardless, Madigan has failed to demonstrate by clear and convincing evidence that the plan was confirmed by fraud. He has

5

proffered no concrete evidence—much less clear and convincing evidence—that the plan was approved by fraud. Accordingly, even assuming Madigan's arguments in support of lifting the stay were not moot, there is no merit to Madigan's § 1330(a) claim.[2]

Madigan next argues the new Bankruptcy Judge erred in ordering him to pay $424.55 toward late fees owed on the taxes and utilities for the Property because the original Judge previously ordered Brothers to pay the Property's taxes and utilities. The Court agrees.[3]

At the November 25, 2015, hearing, the Bankruptcy Court ordered Brothers to pay for the taxes and utilities for the Property—regardless of whether Madigan sent him a bill or monthly statement.[4] *See* Tr. 22, Nov. 25, 2016 ("It's common sense that it's [Brothers's] responsibility for the current taxes and current water . . . . [Brothers] know[s] that obligation is out there and you better go find out what it is and pay it . . . . [Brothers] know[s] the money is owed. Get it paid."). As result, Brothers became responsible for paying the taxes and utilities for the Property and, as a corollary, any resulting late fees from their non-payment. This was the last guidance from the Bankruptcy Court to the parties regarding the taxes and utilities for the Property until the Bankruptcy Court issued the 2019 order that is the subject of this appeal.

Brothers argues otherwise, asserting Madigan had agreed to pay the utilities and water bills. There is no evidence in the record, however, demonstrating the existence of this agreement. The

---

[2] In supplemental briefing filed on February 6, 2020, Madigan asks the Court to rule on the status of the Property now that the underlying bankruptcy action has been dismissed. This issue is not properly before the Court. The only questions before the Court relate to the July 17, 2019, order—not the dismissal of the bankruptcy action, which occurred after Madigan's appeal.

[3] This portion of Madigan's appeal is not moot. Because Madigan is obligated to pay $424.55 toward late fees in taxes and utilities, the Court can afford still effective relief by vacating the required payment. *See United Artists Theatre Co.*, 315 F.3d at 226.

[4] The Court notes that, as the Bankruptcy Court found, the tax and water bills for the Property are publicly available and payable.

only agreement that existed between Brothers and Madigan was the December 2016 stipulation. While this stipulation provides Madigan agreed pay outstanding late fees as of the date of the stipulation, it only contemplates a *single*, *one-time payment*. Thus, there is no evidence Madigan agreed to continue to bear responsibility for the taxes and utilities for the Property after the November 25, 2015, order.

Brothers also argues Madigan again failed to deliver the tax and water bills to him, and Madigan should therefore pay the late fees. This argument is similarly unsupported by the record. In 2015, the Bankruptcy Court ordered Brothers to pay the taxes and utilities *regardless* of whether Madigan sent him a bill.[5] *See* Tr. 22, Nov. 25, 2015. As a result, when the parties continued to dispute the payment of late fees in 2019, those instructions remained binding on the parties, and Brothers bore responsibility for paying the taxes and utilities for the Property—as well as any late fees. Therefore, the Bankruptcy Court erred in directing Madigan to pay $424.55 in late fees for the taxes and utilities and the July 2019 order will be vacated to this extent. *See, e.g.*, *In re Pharmacy Benefit Managers Antitrust Lit.*, 582 F.3d 432, 439 (3d Cir. 2009) (stating courts should "be loathe to [reverse prior rulings] in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would make a manifest injustice."); *see also United States v. Wheeler*, 256 F.2d 745 (3d Cir. 1958) (finding rulings of previous judge of same court on the defendants' motions to dismiss were the "law of the case" and could not be disturbed).

---

[5] Although they were not presented to the Bankruptcy Court, the Court notes Madigan has proffered copies of the water bills for the property, which demonstrate the water bills were mailed to the Property's address—where Brothers resided. Brothers does not dispute the validity of these bills. This evidence indicates that Brothers was aware of these bills even if Madigan did not send them to him.

**CONCLUSION**

In light of Brothers's bankruptcy action being dismissed, the instant appeal is moot insofar as it seeks relief from the stay and to revoke the confirmed bankruptcy plan. Nevertheless, the Court will vacate the Bankruptcy Court's order insofar as it directed Madigan to pay $424.55 in late fees for taxes and utilities on the Property.

An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, C.J.